141 P.3d 1048

**EMPLOYERS RESOURCE MANAGE-MENT COMPANY, a Virginia corporation doing business in Idaho, Petitioner–Appellant–Cross Respondent,**

v.

**DEPARTMENT OF INSURANCE,**
State of Idaho, Respondent–
Cross Appellant.

No. 30837.

Supreme Court of Idaho,
Boise, March 2006 Term.

May 9, 2006.

Rehearing Denied Aug. 9, 2006.

Hall, Farley, Oberrecht & Blanton, P.A., Boise, for appellant-cross respondent. Tamsen L. Leachman argued.

Honorable Lawrence G. Wasden, Attorney General, Boise, for respondent-cross appellant. Margaret P. White argued.

SCHROEDER, Chief Justice.

Employers Resource Management Company (ERM) is a Virginia corporation doing business in Idaho, providing a variety of insurance services, including a health benefit plan. The Idaho Department of Insurance (the Department) filed an administrative complaint to determine whether ERM's operations in Idaho were subject to regulation by the Department, and, if so, whether ERM was in violation of Idaho law and subject to sanctions. A bifurcated administrative hearing was held, followed by a review by the

Director of the Department. The Director's decision was appealed to the district court.

The district court affirmed the Director's finding that the health benefit plan operated by ERM is subject to regulation by the Department. The district court also affirmed the Director's order that ERM is to bring the subject health benefit plan into compliance with the requirements of Idaho law and Department regulations. However, the district court reversed the Director's finding that ERM is subject to monetary sanctions for each violation.

ERM appeals to this Court. The Department cross-appeals the decision of the district court setting aside the sanctions awarded by the Director.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

ERM provides professional employment services to small businesses throughout Idaho, including insurance services, such as hospital and medical expenses. The small business clientele who contract with ERM sign a "co-employment agreement" in which these clients are said to be "co-employers" of ERM, in their relationship with ERM.

ERM has been doing business in Idaho for over 12 years. ERM has 84 "co-employer"/clients in Idaho and does not hold a certificate of authority to operate as an insurer in Idaho under I.C. § 41–305. ERM has not registered to provide insurance as a self-insured Multiple Employer Welfare Arrangement (MEWA) under Title 41, chapter 40 of the Idaho Code.

The Department filed an Administrative Complaint against ERM on April 21, 2000, to determine whether ERM's operations in Idaho were subject to regulation by the Department, and the consequences of that decision. A hearing officer was assigned to conduct the hearing. The hearing officer bifurcated the hearing into two phases. Phase I was to decide whether ERM's operations were subject to regulation. Phase II was to decide if ERM was subject to sanctions.

The hearing officer determined that ERM was a Multiple Employer Welfare Arrangement (MEWA), as defined by 29 U.S.C.

§ 1002(40), because it offered health benefits to two or more employers. Subsequently the hearing officer determined that ERM had violated the Idaho Insurance Code by transacting the business of insurance without authorization, and as such, was subject to monetary sanctions pursuant to I.C. § 41–117. The hearing officer ordered that ERM cease and desist from marketing, offering or accepting, or any combination thereof, any insurance plan until such time as ERM complied with Idaho law.

ERM appealed to the Department Director who issued a Final Order largely affirming the hearing officer's decision, correcting the Idaho statute that was appropriate for imposing a monetary sanction. The Director found I.C. § 41–117A rather than I.C. § 41–117 to be the appropriate penalty statute.

ERM filed a Petition for Judicial Review and a Petition for Judicial Stay with the district court. The district court affirmed the Director's decision in part and reversed the decision in part. The district court affirmed the Director's finding that the health benefit plan operated by ERM is subject to regulation by the Department. The district court also affirmed the Director's order that ERM is to bring the subject health benefit plan into compliance with the requirements of Idaho law and Department regulations. However, the district court reversed the Director's finding that ERM has been in violation of Idaho's insurance code, and therefore subject to monetary sanctions for each of these violations.

ERM argues that the district court incorrectly affirmed the Director's conclusion that the Department has subject matter jurisdiction over ERM. ERM asserts that the district court (and Director) incorrectly concluded that ERM is a MEWA, maintaining that ERM is exempt from the registration requirement and other injunctive action. ERM argues that various procedural errors and decisions by the Director have significantly prejudiced ERM's position on appeal.

On cross-appeal the Department argues that the Final Order issued by the Director of the Department should stand in its entire-

ty and requests attorney fees and costs pursuant to I.A.R. 41 and I.C. § 12–117.

## II.

### STANDARD OF REVIEW

■ This Court reviews the agency record independently from the district court acting in its appellate capacity under the Administrative Procedure Act. Serious consideration is given to the district court's decision, but we review the matter as if the case were directly appealed from the agency. The county's decision may be overturned only where it: (a) violates statutory or constitutional provisions; (b) exceeds the agency's statutory authority; (c) was made upon unlawful procedure; (d) is not supported by substantial evidence in the record as a whole; or (e) is arbitrary, capricious, or an abuse of discretion.

The Court exercises free review over interpretation of a statute. Our primary function when interpreting a statute is to determine and give effect to the legislative intent. "If the statutory language is unambiguous, 'the clearly expressed intent of the legislative body must be given effect, and there is no occasion for a court to consider rules of statutory construction.'" The plain meaning of a statute will prevail unless clearly expressed legislative intent is contrary or plain meaning leads to absurd results.

*Kootenai Med. Ctr. v. Bonner County Comm'rs,* 141 Idaho 7, 8–9, 105 P.3d 667, 668–69 (2004) (internal citations omitted).

## III.

### THE DIRECTOR CORRECTLY CONCLUDED THAT ERM'S TRUST WAS A MEWA

ERM first argues that it cannot be a MEWA because it is a professional employer organization ("professional employer") under the Idaho Professional Employer Recognition Act (IPERA). ERM is incorrect. Whether ERM is a MEWA is a federal question to which Idaho law does not apply. Further to the extent that IPERA does not conform to the Employee Retirement Income Security Act of 1974 (ERISA), ERISA supersedes IPERA. Therefore, whether ERM is

a professional employer does not affect its status as a MEWA.

■ ERISA is the federal law which regulates employee welfare benefits. 29 U.S.C. § 1001, *et seq.* The provisions of ERISA "supersede any and all State laws insofar as they . . . relate to any employee benefit plan" established or maintained "by any employer [or employer organization] engaged in commerce or in any industry or activity affecting commerce." 29 U.S.C. §§ 1003(a), 1144(a). There are exceptions to this broad preemption. States are free to regulate the business of insurance so long as the state is only regulating an insurance company, as opposed to an employee benefit plan. Additionally, states may regulate a MEWA which is not fully insured to the extent that the state's regulations are not inconsistent with ERISA. 29 U.S.C. § 1144(b)(6). In this case, it is undisputed that ERM's trust is not fully insured. Therefore, the point of contention is whether ERM's trust is a MEWA. It is.

An employee benefit plan is a MEWA if it provides benefits to the employees of two or more employers and is established or maintained under or pursuant to one or more collective bargaining agreements. 29 U.S.C. § 1002(40)(A). The parties do not dispute that ERM's trust was established and is maintained pursuant to collective bargaining agreements between ERM and its co-employers. ERM maintains, however, that ERM is the only employer. Under ERISA, an employee is defined as "any individual employed by an employer" and an employer is defined as "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity." 29 U.S.C. §§ 1002(5)-(6). ERM argues that its clients are not employers under ERISA.

■ The United States Supreme Court has adopted the common law agency test to determine whether an employee-employer relationship exists under ERISA. *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 323–24, 112 S.Ct. 1344, 1348, 117 L.Ed.2d 581, 589–90 (1992). Under this test, a court must consider the following factors when de-

termining whether a hired party is an employee of any given employer:

> [T]he hiring party's right to control the manner and means by which the product is accomplished[;] ... the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party

*Id.* None of these factors alone is decisive; instead, a court must assess and weight "all of the incidents of the relationship" in making its determination. *Id.* at 324, 112 S.Ct. at 1349, 117 L.Ed.2d at 590. The hearing officer found that under the common law agency test both ERM and its co-employers were distinct employers, thereby making ERM's trust a MEWA.

Substantial evidence supports the hearing officer's finding that ERM's clients are employers. ERM's clients retain actual control over the employees. Under the agreement, ERM's clients have and exercise the power to establish wages and working hours, supervise, train, discipline, and terminate the employees. ERM also has the right to perform these tasks, yet it seldom, if ever, has exercised this control. Further, even though ERM issues the employee's checks and W–2's, the clients provide all payment information, including hours worked and wages, to ERM. Additionally, the clients make payments to ERM for the employee's wages. Consequently, because ERM's clients retain and exercise actual control over the employees, the clients are employers under ERISA.

### IV.

### WHETHER THE DEPARTMENT HAD JURISDICTION TO REGULATE ERM

■ ERM argues that even if its trust is a MEWA, Idaho law does not provide the De-

partment with the authority to regulate MEWAs. ERM is correct in its statement that the Department has limited jurisdiction. However, ERM is incorrect in its assertion that the Department cannot regulate ERM's trust because the Idaho Code contains no language specifically pertaining to MEWAs. The Idaho Code grants the Department the authority to enforce the provisions of the Code and to regulate and investigate insurance matters. I.C. § 41–210. Nothing precludes this grant of authority from extending to MEWAs.

### V.

### ERM IMPROPERLY TRANSACTED INSURANCE IN IDAHO

■ Idaho Code § 41–305 requires any person or company which transacts insurance to obtain a certificate of authority. ERM argues that it did not transact insurance because it sold professional employer arrangements and the sale of such arrangements does "not constitute the sale of insurance within the meaning of applicable Idaho law." I.C. § 44–2405(6). An analysis regarding whether ERM transacted insurance does not require this Court to determine whether ERM is a professional employer under Idaho law or whether ERM sold insurance. *See* I.C. § 44–2403(5)(d).

> Idaho Code section 41–112 states:
> "Transacting insurance" includes any of the following:
> (1) Solicitation and inducement.
> (2) Preliminary negotiations.
> (3) Effectuation of a contract of insurance.
> (4) Transaction of matters subsequent to effectuation of a contract of insurance and arising out of it.
> (5) Mailing or otherwise delivering any written solicitation to any person in this state by an insurer or any person acting on behalf of the insurer for fee or compensation.

This definition does not require the sale of insurance. Rather, as explained by the Hearing Officer, ERM transacted insurance because the agreements between ERM and

its clients along with the Employee Welfare Benefit Plan constitute a contract of insurance. This finding is supported by substantial evidence. ERM receives compensation and payments from both ERM's clients and from the employees. In exchange ERM is required to pay benefits, including health and worker's compensation. If ERM's clients do not make their monthly payments, then ERM's obligation to make benefit payments under the contract ceases.

## VI.

### THE DIRECTOR ERRED IN THE EXTENT OF MONETARY PENALTIES IMPOSED AGAINST ERM

■■ The hearing officer and the Director imposed sanctions against ERM for 84 violations of the insurance code. The penalty was $420,000, or $5,000 per violation. The Director determined that the hearing officer had utilized the wrong statutory provision for the imposition of penalties and, instead applied I.C. § 41–117A which provides:

The director may impose an administrative penalty not to exceed fifteen thousand dollars ($15,000), for deposit in the general account of the state of Idaho, upon any person who transacts insurance of any kind or character or transmits for a person, other than himself, an application for a policy of insurance without proper licensing, or after such licensing shall have been suspended or revoked.

The district court reversed the Director's order of sanctions, citing *H & V Eng'g v. Bd. of Prof'l Engineers*, 113 Idaho 646, 747 P.2d 55 (1987), and *Tuma v. Bd. of Nursing*, 100 Idaho 74, 593 P.2d 711 (1979), for the conclusion that "[w]hat an agency may not do is create a rule, try an offender for violating the rule, and impose a sanction for the violation of the rule thus created, all in the same proceeding."

In essence the district court determined that the statutes and the Department's rules and regulations were not sufficiently clear to put ERM on notice that its conduct might subject it to penalties. Contrary to the district court's determination, a review of the applicable federal and state statutes gave ERM notice that the state would have jurisdiction and that its conduct involved the transaction of insurance. Consequently, ERM is subject to the imposition of sanctions. However, the penalty provision under which the Director acted does not provide for a penalty for each transaction, unlike I.C. § 41–117. To the extent the penalty imposed by the Director exceeds the $15,000 penalty prescribed in I.C. § 41–117A, the penalty is vacated.

## VII.

### MISCELLANEOUS ISSUES

1. The claim that the Director refused to consider newly discovered and relevant evidence in the reconsideration and review phases.

ERM filed an Amended Petition for Review with supporting affidavits which the hearing officer deemed irrelevant. The thrust of the information was to demonstrate that ERM was not flaunting the law and to mitigate any penalties that were finally imposed. While there may have been relevancy on reviewing the propriety of the extensive penalties determined by the hearing officer and the Director, this Court's decision determining the limits of the penalty under I.C. § 41–117A moots that issue.

2. The claim that the Director erred in seeking assistance and guidance from a Deputy Attorney General who was previously assigned to the Department of Insurance.

■■ The Director selected as legal counsel an attorney who had previously served as legal counsel to the Department of Insurance from 1988 to 1995 and had been provided with some material relating to ERM. ERM claims this created an issue of bias and possible conflict since there was a potential the attorney would be called as a fact witness. He was not called as a fact witness. There is no apparent bias in selecting an attorney who actually has expertise in insurance law. This claim is without merit.

3. ERM claims the Director erred in allowing an incomplete hearing transcript to become part of the record.

■■ Apparently only a portion of the arguments before the hearing officer were re-

corded. ERM maintains there was error. It appears there was. IDAPA 04.11.01.651 provides: "All hearings shall be recorded on audiotape...." It appears the error, if any, was harmless. The Director had the evidence, and ERM had the opportunity to present argument.

4. ERM asserts that the Director had no authority to issue injunctive relief.

 In its reply brief ERM raises the issue of whether the Director had the authority to issue a final cease-and-desist order. It appears the Director did not. Idaho Code § 41–213(2) provides:

> If the director believes that any person is violating or about to violate any provision of this code or any order or requirement of the director issued or promulgated pursuant to authority expressly granted the director by any provision of this code or by other law, the director may bring an action against such person in the name of the people of the state of Idaho in a district court of this state to enjoin such person from continuing such violation or doing any act in furtherance thereof. In the action the court may enter such order or judgment granting such preliminary or final injunction as the court determines to be proper.

## VIII.

### NEITHER PARTY IS ENTITLED TO ATTORNEY FEES ON APPEAL

 ERM requests its costs and reasonable attorneys' fees on appeal, pursuant to I.A.R. 40 and 41. However, since the Court affirms the Director's decision in favor of the Department, ERM is not entitled to attorney fees. The Department requests costs and attorney fees on appeal, pursuant to I.A.R. 41 and I.C. § 12–117. The Department asserts the appeal has been brought frivolously, unreasonably, and without foundation and that it is entitled to attorney fees. Because this is a case of first impression in Idaho, it cannot be said that the appeal was brought frivolously, unreasonably, and without foundation. Therefore, the Department is only entitled to costs on appeal.

## IX.

### CONCLUSION

The Director's Final Order is affirmed in part and reversed in part. The case is remanded for entry of an order consistent with this opinion. Costs are awarded to the Department. No attorney fees are allowed.

Justices TROUT, EISMANN and JONES and Justice Pro Tem WALTERS concur.